## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MELVIN K. WILLIAMS, JR.**,<br><br>Plaintiff,<br><br>v.<br><br>**GEORGE E. PERDUE**,<br>*in his official capacity as Secretary,*<br>*U.S. Department of Agriculture*,<br><br>Defendant. | Case No. 1:19-cv-02072 (TNM) |

## <u>MEMORANDUM OPINION</u>

In life and in law, you are not always given a second chance.  That is the case here.

Three years ago, following a workplace injury, Melvin Williams was terminated from his

employment with the U.S. Department of Agriculture ("the Department").  He filed a complaint

with the Department's Equal Employment Opportunity ("EEO") office alleging that the

Department discriminated against him because of his injury.  After the Department issued an

unfavorable final decision, he tried to appeal.  But he sued in the wrong court.  Though the

Department's decision explained that Williams could appeal "in the appropriate United States

District Court," he filed his case elsewhere.  The Secretary of the U.S. Department of Agriculture

("the Secretary"), who was sued in his official capacity, removed the case here and this Court

dismissed it on derivative jurisdiction grounds.

This case is Williams's second try.  The Secretary now urges the Court to dismiss

Williams's new case because the Court lacks subject matter jurisdiction and his Complaint is

time-barred.  The Secretary suggests that Williams failed to raise several claims in his

administrative proceedings.  The Court agrees that Williams failed to raise his retaliation claim, so it will dismiss Count III from his Complaint.

But even if Williams's other claims are not exhausted, the Secretary points out that Williams had only 90 days to appeal the Department's final decision.  By the time he filed this Complaint, 447 days had passed.  Though Williams suggests that the Court should equitably toll the period when his first case was pending, the Court disagrees.  Williams has not met the high threshold showing that he is entitled to equitable tolling.  The Court will thus grant the Secretary's motion to dismiss Williams's Complaint.

Finally, Williams has also moved to amend his Complaint.  For the reasons below, the Court will deny Williams's motion because amendment would be futile.

## I.

Melvin Williams worked for ten years as a printing and bindery equipment operator at the Department of Agriculture headquarters.  Compl. ¶ 8, ECF No. 1.  Five years ago, while trying to move heavy equipment at work, his right hand was severely lacerated.  *Id*. ¶¶ 12–15.  Over the next two years, Williams sought approval from his supervisors at the Department to receive time off for several surgeries and obtain workplace accommodations for his injury.  *See generally id*. ¶¶ 17–89.  But the Department refused to cooperate.  *Id*.  Instead, according to Williams, the Department improperly responded to his injury in several ways.  It "unfairly blamed Mr. Williams for the accident" and "falsely understated the severity of Mr. Williams' resulting injury."  *Id*. ¶ 110.  It "failed or refused to accommodate Mr. Williams' disability while he worked at the Department's print shop."  *Id*. ¶ 123.  The Department's Workers' Compensation Coordinator intentionally "delay[ed] payment of workers' compensation benefits."  *Id*. ¶ 115.

And, ultimately, the Department terminated Williams in retaliation for his "active opposition to [] practices made unlawful by Section 504 [of the Rehabilitation Act of 1973]." *Id.* ¶¶ 127–28.

Following his termination, Williams submitted a complaint to the Department's EEO office. *See* Final Agency Decision ("FAD") 2, ECF No. 7-1.[1] Following the EEO office's investigation, the Department issued a Final Agency Decision ("FAD") on March 29, 2018, concluding that there was no evidence of harassment, discrimination, retaliation, or failure to accommodate Williams's disability. *Id.* at 15–17, 19. The FAD explained—in bold, all-capitalized headings—that Williams had two ways to appeal the Department's decision: "Appeal to the Merit Systems Protection Board (MSPB)" or file a "Civil Action in Federal District Court." *Id.* at 17–18 (capitalization altered). Under this latter heading, the notice began, "You also have the right to file a civil action in an appropriate United States District Court. If you choose to file a civil action you may do so . . . within ninety (90) days of receipt of this final decision if no appeal has been filed[.] . . . " *Id.* at 18.

Within 22 days of the Department's decision, Williams tried to appeal the FAD by filing a complaint *pro se*, but with the Superior Court of the District of Columbia. Compl. at 2 n.1. The Secretary removed that case here.[2] *Id.* Then, the Secretary moved to dismiss the case on derivative jurisdiction grounds. *Id.* Since the Superior Court lacked jurisdiction over Williams's Rehabilitation Act claims, this Court held that it lacked derivative jurisdiction. *See Williams v. Perdue*, 386 F. Supp. 3d 50, 53–54 (D.D.C. 2019). It thus dismissed Williams's case on June 7, 2019. *Id.* Thirty-four days later, Williams re-filed his Complaint, repeating many of the same

---

[1]  All page citations refer to the pagination generated by the Court's CM/ECF system.

[2]  While his first case was pending here, Williams obtained legal counsel. Compl. at 2 n.1. Williams is not proceeding *pro se* in this current litigation.

allegations, but "updated [them] to include allegations about the period since the original

Complaint was filed."  Compl. at 2 n.1.

The Secretary now moves to dismiss this new case.  *See* Def.'s Mot. to Dismiss, ECF No.

7.  After reviewing the parties' briefs in support and opposition, the Court requested

supplemental briefing about whether Williams, as a former federal employee, could properly

bring his claims under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  *See* Order

(Nov. 21, 2019), ECF No. 11.  In response, Williams admitted that "federal employees have

Rehabilitation Act recourse only under Section 501 [of the Rehabilitation Act]."  Pl.'s Mot. to

Am. Compl. 2, ECF No. 14-1.  He therefore moved to amend his Complaint to "lodge his

Rehabilitation Act claims under Section 501."  *Id*. at 2.  The Secretary opposed this motion.  *See*

Def.'s Suppl. Br. 2, ECF No. 15.

Defendant's Motion to Dismiss and Plaintiff's Motion to Amend are now ripe for review.

## II.

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff must establish the

predicates to jurisdiction.  *See Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir.

2017).  When ruling on this motion, a court must "assume the truth of all material factual

allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of

all inferences that can be derived from the facts alleged."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d

1137, 1139 (D.C. Cir. 2011) (cleaned up).  If a court determines that it lacks jurisdiction for any

claim, it must dismiss that claim.  Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Even if a court has jurisdiction, to survive a motion to dismiss under Rule 12(b)(6), a

complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is

plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court must "treat

the complaint's factual allegations as true and must grant the plaintiffs the benefit of all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up).

But when a defendant moves to dismiss under 12(b)(6) on time-bar grounds, a court will dismiss if it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2017) (internal quotation omitted). Thus "if no reasonable person could disagree on the date on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds." *Brookens v. Acosta*, 297 F. Supp. 3d 40, 45 (D.D.C. 2018) (cleaned up); *see Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989) (noting that a court may determine as a matter of law when a cause of action accrued "if no reasonable person could disagree on the date").

When reviewing a motion to dismiss under Rule 12(b)(6), courts must consider only "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (alterations in original). Courts may consider an agency's FAD without converting the motion to a motion for summary judgment because these are official, public documents subject to judicial notice. *See Nicholson v. Mabus*, 257 F. Supp. 3d 6, 8 (D.D.C. 2017).

A final note about the Federal Rules is in order here. Rule 15(a) provides that courts should "freely give" leave to file an amended complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is an abuse of discretion for courts to deny leave without "providing a sufficiently compelling reason." *See Easter v. District of Columbia*, 128 F. Supp. 3d 173, 177 (D.D.C. 2015)

(internal quotations omitted).  These reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment."  *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (cleaned up).

## II.

The Secretary presents three reasons for the Court to dismiss Williams's Complaint. First, he urges that Williams's Complaint is time-barred since more than 90 days have passed since Williams received the Department's final decision.  Def.'s Mot. at 7.  Next, he suggests that Williams failed to exhaust all his claims because Counts I and III go beyond the scope of his EEO Complaint.  *Id.* at 8–9.  Third, he contends that the Court lacks subject matter jurisdiction over portions of Williams's discrimination claim.  *Id.* at 10–13.[3]  The Court, in its request for supplemental briefing, raised a fourth reason for dismissal: Williams lacks a cause of action under § 504 of the Rehabilitation Act.  *See* Order (Nov. 21, 2019).

Williams's Complaint asserts claims of discrimination, retaliation, and failure to accommodate his disability under § 504 of the Rehabilitation Act.  The problem is, Williams has no recourse under this section.  Williams was a federal employee.  And in *Taylor v. Small*, the D.C. Circuit explicitly held that "§ 504 does not provide federal employees . . . relief under the Rehabilitation Act."  350 F.3d 1286, 1291 (D.C. Cir. 2003) (internal quotations omitted).

Williams admits that "the Complaint's pleading of Section 504 was a product of the inadvertence of counsel."  Pl.'s Mot. to Am. Compl. at 2.  He now asks to amend the Complaint to replead under § 501.  *Id.*  While the Court would typically freely grant this leave, for the

---

[3]  The Secretary also argued that Williams failed to "state a claim of a hostile work environment."  Def.'s Mot. at 13. But Williams clarified that his Complaint "does not assert a hostile work environment claim."  Pl.'s Opp'n at 10.  So the Court need not address this argument.

reasons explained below, even if Williams had originally pled under § 501 of the Rehabilitation Act, the Court would still dismiss his claims.  The Court will therefore deny Williams's Motion to Amend as futile.  *See Easter*, 128 F. Supp. 3d at 177 (noting that futility is one reason to deny a motion to amend).

## A.

The Court begins, as it must, with the Secretary's argument that this Court lacks subject matter jurisdiction over portions of Count I of Williams's Complaint.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998).  Count I, which alleges discrimination based on Williams's disability, mentions that the Department's Workers' Compensation Coordinator, David Najafi, tried to prevent Williams from receiving compensation benefits.  *See* Compl. ¶ 115.  The Secretary construes these allegations as Williams trying to receive judicial review of an Office of Workers' Compensation Programs ("OWCP") compensation decision under the Federal Employees' Compensation Act ("FECA").  Def.'s Mot. at 11.  This, the Secretary argues, the Court cannot do.  *Id.*

This is true as far as it goes.  If Williams were disguising a challenge to his workers' compensation benefits as a discrimination claim under the Rehabilitation Act, this Court would lack subject matter jurisdiction over portions of Count I of the Complaint.  *See Meester v. Runyon*, 149 F.3d 855, 857 (8th Cir. 1998) ("[A] frustrated FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that the Rehabilitation Act entitles her to [relief].").  But Williams never seeks review of the OWCP's decision.  Pl.'s Opp'n 8, ECF No. 9 ("Williams does not here contest the initial denial of workers' compensation benefits[.]").

And why would he?  The OWCP determined in 2016 that Williams *was* entitled to workers' compensation benefits, reversing its 2015 denial.  Compl. ¶ 89.

Instead, Williams includes these facts to show "evidence of discriminatory animus against Mr. Williams," Pl.'s Opp'n at 8, and "a pattern of disparaging Mr. Williams' workplace injury in discriminatory fashion," *id*. at 9.  The Court may consider a Department employee's behavior during the workers' compensation application process as circumstantial evidence of animus without questioning the OWCP's ultimate decision.  *See Von Drasek v. Burwell*, 121 F. Supp. 3d 143, 160 (D.D.C. 2015) ("When advancing an intentional discrimination claim, a plaintiff may either present direct evidence of discrimination based on her disability, or she may provide indirect—or circumstantial—evidence of discrimination.").  Since Williams does not try to relitigate the OWCP's determination, the Court does not lack subject-matter jurisdiction on that ground.

## B.

The Secretary next urges that Williams's discrimination (Count I) and retaliation (Count III) claims should be dismissed because Williams failed to exhaust his administrative remedies.  Def.'s Mot. at 8.  To begin, the Court needs to correct the parties' shared misunderstanding about the nature of this argument.  Despite the Secretary's assurances that exhaustion is a "procedural requirement, not a jurisdictional one," *see* Def.'s Mot. at 8, failure to administratively exhaust a § 501 claim *is* a jurisdictional defect, *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006); *see also Williams v. Brennan*, 320 F. Supp. 3d 122, 128 (D.D.C. 2018) (noting that the D.C. Circuit treats § 501's statutory requirements, like administrative exhaustion, as jurisdictional while regulatory requirements, like time-limits for appeal, as non-jurisdictional).

It is thus Williams's burden to plead and prove jurisdiction, including that he exhausted his administrative claims.[4]  *See Georgiades v. Martin-Trigona*, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984).  But this is not an inflexible standard.  Under the Rehabilitation Act, like Title VII, a "court must be mindful that a plaintiff should not be deprived of judicial review based on failure to follow procedural technicalities of the exhaustion requirement, so long as the defendant has been 'put on notice' of the plaintiff's claims."  *Sanders v. Kerry*, 180 F. Supp. 3d 35, 42 (D.D.C. 2016).  This is especially true when, as here, the defendant mistakenly suggests the burden is on him under Rule 12(b)(6) rather than the plaintiff under 12(b)(1).

The Secretary first suggests that Williams failed to exhaust his claim that the Department discriminated against him because of his disability.  He notes that ¶¶ 110 and 114–15 of the Complaint are the "alleged acts of discrimination based on disability in Count I."  *Id*. at 9.  These paragraphs recite allegations that Williams's supervisors understated and ignored the severity of his injury and that a Department's employee, Najafi, delayed and disrupted Williams's workers' compensation payments.  *Id*. at 9–10 (citing Compl. ¶¶ 110, 114–15).  The Secretary contends that this claim should be dismissed because it "was not one of the accepted allegations at the administrative level."[5]  *Id*. at 10.  In response, Williams proffers that he did exhaust this claim because his administrative complaint charged that he was "wrongfully terminated on account of his disability."  Pl.'s Opp'n at 6.

---

[4]  Although Williams neither mentions his EEO complaint in his Complaint nor attaches the FAD, the Department attached the FAD and EEO investigation documents to its Motion to Dismiss.  *See* Def.'s Mot., Ex. 2–3, ECF Nos. 7-1, 7-2.  When considering a motion to dismiss on 12(b)(1) grounds, "it has been long accepted that the judiciary may make appropriate inquiry beyond the pleadings to satisfy itself on authority to entertain the case."  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (internal quotations omitted).  The Court will therefore review these EEO filings to determine whether it has jurisdiction over Counts I and III of Williams's Complaint.

[5]  The Department also seems to suggest that Williams is conflating his discrimination and failure to accommodate claims.  Def.'s Mot. at 9–10.  But it does not explain how conflating these claims equates to a failure to exhaust administrative remedies.

It is certainly true that Williams's Complaint provides more details about the circumstances leading to his termination than the Department's FAD or EEO's Report of Investigation ("ROI"). But in his administrative proceedings, Williams did allege that, following his injury, he was "treated differently [and that] his disability was the sole reason for this treatment." *See* FAD at 3. He also argued that "his disability was a factor in his termination." *Id*. More, Williams's affidavit in the ROI alleged that he was terminated "after his requests for accommodation were denied or ignored." *See* EEO Report on Investigation ("ROI"), Def.'s Mot. 10, Ex. 3, ECF No. 7-2. And his affidavit also raised Najafi's allegedly discriminatory treatment, explaining that Najafi "failed to approve [Williams's] 'continuation of pay' request" and that Williams "believes his disabilities caused by his injury . . . were the only reason[] his continuation of pay was not approved in a timely manner." *See* ROI at 15.

Though these allegations are more fleshed out in Williams's current Complaint, Williams sufficiently raised these issues in his administrative proceeding to satisfy the Court's jurisdiction here. *See Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) ("Naturally every detail of the eventual complaint need not be presaged in the EEOC filing, but the substance of an ADA claim, like that of a Title VII claim, must fall within the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." (internal citations omitted)). The Secretary had notice that Williams believed that his termination and his supervisors' treatment of him were acts of discrimination under the Rehabilitation Act. *See Sanders*, 180 F. Supp. 3d at 42. The Court will not dismiss Count I for failure to exhaust.

Second, the Secretary urges that Williams failed to exhaust his claim that the Department retaliated against him "for opposing practices made unlawful by Section 504." Def.'s Mot. at 10.

This claim alleges that the Department retaliated against Williams for opposing his supervisors' discriminatory behavior.  *See* Compl. ¶ 127–28.

The Secretary is correct.  Williams did allege retaliation in his EEO complaint.  But there he alleged that the Department retaliated against him for his Equal Employment Opportunity activity, *see* FAD at 2, 17, *not* because he "opposed practices made unlawful by Section 504," *see* Compl. ¶ 127–28.  Since Williams admitted that "he had no prior EEO activity," the FAD rejected that claim.  *Id*. at 17.  Williams now attempts to adjust his retaliation claim to explain that he believes the Department terminated him in retaliation for speaking up about his supervisors' discrimination, not because of his EEO activity.  *See* Compl. ¶¶ 127–28.

The problem is, this is an entirely different claim that he did not raise before the EEO office.  Williams suggests that he can raise this new claim because the retaliatory conduct he now challenges is "'like or reasonably related' to the content of the charge as filed."  Pl.'s Opp'n at 7 (citing *Pierson*, 821 F. Supp. 2d at 364).  Indeed, other judges in this District have declined to bar Title VII retaliation claims when a plaintiff's claims "were of a like kind to the retaliatory acts alleged in the EEOC charge, which were specified to be of an ongoing and continuing nature."[6]  *Pierson v. Wash. Metro. Area Transit Auth.*, 821 F. Supp. 2d 360, 366 (D.D.C. 2011) (internal quotation omitted).  Here, Williams claims that he can challenge "after-charge acts" of retaliation because they are "part of a series" of acts "charged in the administrative complaint."  Pl.'s Opp'n at 7 (citing *Pierson*, 821 F. Supp. 2d at 366).

Williams's argument on this issue is unclear and underdeveloped.  Williams does not explain what "after-charge acts" he thinks preserve his retaliation claim in this Court.  To the

---

[6]  Williams cites no authority that this "like or reasonably related" exception permits unexhausted claims to proceed when exhaustion is jurisdictional, as it is with § 501 of the Rehabilitation Act, as opposed to when it is non-jurisdictional, as it is for Title VII.

contrary, the only retaliatory act referenced in Count III is the Department's termination of Williams's employment. *See* Compl. ¶¶ 127–28 (reciting the "practices made unlawful by Section 504" that Williams opposed and alleging that Williams's "active opposition to these practices . . . led directly to his termination"). But Williams was terminated *before* filing his complaint to the EEO office, so that cannot be an "after-charge act." *See id.* ¶ 93 (noting Williams's termination on January 17, 2017); FAD at 2 (noting Williams first contacted an EEO counselor on January 27, 2017).

More, although he asserts that his new retaliation charge is "like or reasonably related" to the charge raised before the EEO office, he makes no attempt to explain how. The whole of his argument on this point is contained in one sentence:

> Especially where, as here, the employee alleges that the after-charge acts sued upon were part of a series, and that they and the acts charged in the administrative complaint were products of the same discriminatory motive, all should be understood as "like or reasonably related to" the acts charged in the administrative complaint, which include several acts in the same series. *See* Final Agency Decision, ECF No. 7-2, at 1 (alleging that employer's failure to pay adjudicated workers' compensation benefits was both discriminatory and retaliatory).

*See* Pl.'s Opp'n at 7. This is not enough. Williams does not explain how retaliation for his (non-existent) EEO activity arose from the "same discriminatory motive" as his new retaliation charge. *Id*. Nor does he specify which discriminatory acts are part of the "same series." *Id*. Instead, the Court is left to decipher Williams's vague statement of a legal conclusion.

Williams then pivots and suggests that the Secretary has not met *his* burden of showing a "lack of reasonable relation by a preponderance of the evidence." *Id*. But Williams upends the Rehabilitation Act's burden of proof here. Because exhaustion under § 501 of the Rehabilitation Act is jurisdictional, *Williams* has the burden of proving that he exhausted his claims. *See Knapp Med. Ctr.*, 875 F.3d at 1128 ("The plaintiffs bear the burden of establishing jurisdiction."); *see*

*also Dick v. Holder*, 80 F. Supp. 3d 103, 110 (D.D.C. 2015) ("The *plaintiff* bears the burden

to prove that he has exhausted his Rehabilitation Act claim." (emphasis added)).  Yet neither

Williams's Complaint nor his brief prove or even explain how his retaliation claim was

administratively exhausted.  He thus fails to meet *his* burden to establish jurisdiction.  *See*

*Williams*, 320 F. Supp. 3d at 128 (dismissing for failure to exhaust when there was "no

evidence" that plaintiff ever raised certain allegations in an administrative EEO complaint).  The

Court will therefore dismiss Count III for failure to exhaust administratively.[7]

## C.

### 1.

The Secretary finally argues that Williams's case should be dismissed as time-barred.

Def.'s Mot. at 7.  A Rehabilitation Act claim against a federal agency must be filed with the U.S.

District Court "[w]ithin 90 days of receipt of notice of final action taken by [the Department]."

42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407; *see* 29 U.S.C. § 794a(a)(1) (making Title VII

remedies, procedures, and rights—including 42 U.S.C. § 2000e-16—applicable to claims under

§ 501 of the Rehabilitation Act).  Here, the Department issued its final decision on March 29,

2018.  *See* FAD at 19.  Williams challenged the decision in Superior Court 22 days later.  Compl.

at 2 n.1.  He did not file his Complaint here until July 11, 2019.  *See generally* Compl.  Even if

Williams did not receive the FAD until the day he challenged it in Superior Court, 447 days

passed before he filed a Complaint in federal court.

---

[7] As Williams's appeal of the Department's FAD is time-barred, Williams's retaliation claim may have also been subject to dismissal on 12(b)(6) grounds along with the rest of his Complaint.  *See infra* III.C.  But since this Court lacks jurisdiction over Williams's retaliation claim, it does not reach that question.

No one disputes these facts.[8]  *See* Pl.'s Opp'n at 2.  Even so, Williams responds that his Complaint should not be dismissed because the Court may equitably toll the time during which his previous case was pending before the Superior Court and this Court.  *Id*. at 3.  The 90-day deadline is not jurisdictional; it is treated like a statute of limitations.  *Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006); *Doak v. Johnson*, 798 F.3d 1096, 1104 (D.C. Cir. 2015) (noting that under the Rehabilitation Act, "the administrative time limits created by the EEOC erect no jurisdictional bars to bringing suit").[9]  So even if Williams's current Complaint falls outside the 90-day deadline, the Court need not dismiss it if Williams carries his burden of proving that equitable tolling applies.  *See Colbert*, 471 F.3d at 167; *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (noting that the "litigant seeking equitable tolling bears the burden of establishing [it]").

**2.**

Williams urges that equitable tolling should apply to his Complaint because "[i]t is established law that if a *pro se* plaintiff files an action timely but in the wrong court . . . the original action's filing date should control for limitations purposes under the doctrine of equitable tolling."  Pl.'s Opp'n at 3.  But this law is not as established as Williams suggests.

Williams's argument rests on four cases.  First, he notes that in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990), the Supreme Court held that the "doctrine of equitable

---

[8] The Court is mindful that "courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint . . . because statute of limitations issues often depend on contested questions of fact."  *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  But dismissal is appropriate "if the complaint on its face is conclusively time-barred."  *Id*. (citing *Richards v. Mileski*, 662 F.2d 65, 73 (D.C. Cir. 1981)).  Williams's Complaint admits the facts on which the Department rests its time-bar argument.  *See* Compl. at 2 n.1.  So this statute of limitations issue does *not* depend on contested questions of fact and may be appropriately dismissed on those grounds.

[9] Many cases addressing the 90-day deadline for appeal of an agency's FAD or EEOC's decision arose in the Title VII context.  *See, e.g.*, *Colbert*, 471 F.3d at 167.

tolling protects claimants who have 'actively pursued [their] judicial remedies by filing a defective pleading during the statutory period.'" Pl.'s Opp'n at 3. But *Irwin* was not a case in which the litigant filed in the wrong court. In *Irwin*, the Supreme Court considered whether the statute of limitations period for filing an appeal of an EEOC decision in federal court was jurisdictional. *Id*. at 95. It held that it was not. *Id*. at 95–96.

The Supreme Court then turned, as this Court does here, to consider whether the petitioner was entitled to equitable tolling. *Id*. at 96. Reflecting on cases when the Court had applied the equitable tolling doctrine to private litigants, it noted that federal courts "have typically extended equitable relief only sparingly." *Id*. For instance, the Court has "allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id*. But it has "generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Id*.

Irwin filed his appeal with the district court late because his lawyer was absent from the office when his firm received the EEOC's decision. *Id*. at 96. This was "at best a garden variety claim of excusable neglect" and so Irwin's case was not entitled to equitable tolling. *Id*.

*Irwin* thus explains that Williams's claims *may* be subject to equitable tolling and that courts must determine whether a claimant is "actively pursu[ing] his judicial remedies" or whether he "failed to exercise due diligence in preserving his legal rights." *Id*. Though *Irwin* permits equitable tolling in discrimination cases, it does not directly establish, as Williams suggests, that a *pro se* plaintiff who files a timely action in the wrong court is entitled to

equitable tolling.  And as explained below, Williams does not meet the more precise

requirements that the Supreme Court and the D.C. Circuit have established.

Williams's next two cases are more on point.  In *Herb v. Pitcairn*, the Supreme Court

considered whether the petitioner's claim was "commenced" under the Federal Employers'

Liability Act ("FELA") when the petitioner originally filed his action in the incorrect venue.  325

U.S. 77, 78–79 (1945).  The FELA, at that time, provided that "no action shall be maintained

under this chapter unless commenced within two years from the day the cause of action

accrued."  *Id*. at 78.  In a two-paragraph opinion, the Supreme Court determined that the action

was "commenced" under the FELA, even in the improper venue, as long as "the state

law . . .  permits the [case to] transfer through change of venue or otherwise to a court which

does have jurisdiction to hear, try, and otherwise determine that cause."  *Id*. at 79.

The Court expounded upon this holding two decades later in *Burnett v. New York Central

Railroad Co.*, 380 U.S. 424 (1965).  There, as in *Herb*, Burnett had filed his case in the improper

venue.  *Id*. at 425.  Ohio law though, unlike Illinois, did not permit the court to transfer Burnett's

case to another Ohio state court.  *Id.* at 432.  So Burnett refiled his case with the proper court

eight days after it was dismissed.  *Id.* at 425.  But by the time Burnett filed his new case, the

FELA's statute of limitations had run and the new court dismissed his case.  *Id*.

On appeal, the Court determined that the complaint was entitled to equitable tolling.

First, it observed that Burnett "did not sleep on his rights but brought an action within the

statutory period in the state court of competent jurisdiction."  *Id.* at 429.  Though venue was

improper, the defendant could have—and in other cases had—waived venue objections so that

the original court could hear the case.  *Id*.

Second, failing to equitably toll Burnett's complaint would lead to unequal enforcement of the FELA across the country. *Id.* at 433. The Supreme Court had "long recognized that the FELA has a uniform operation," *id.*, and "a major reason for having a federal limitation provision was to achieve national uniformity," *id.* at 434 (internal citations omitted). Had Burnett brought his claim in federal court or one of 31 other states, his case could have been transferred to the proper venue without the statute of limitations barring his claims. *Id.* at 431 (citing *Herb*, 325 U.S. at 78). And 13 other states had "savings statutes" which would have preserved his action after filing in the improper venue. *Id.* at 431 & n.9. Thus his FELA case would not have been barred had he filed in federal court or 44 other states. *Id.* at 432. To preserve uniformity across the country, the Court held that "when a plaintiff begins a timely FELA action *in a state court having jurisdiction*, and serves the defendant with process and plaintiff's case is dismissed for improper venue, the FELA limitation is tolled during the pendency of the state suit." *Id.* at 434–35 (emphasis added).

But the Supreme Court's concerns in *Herb* and *Burnett* do not save Williams's Complaint. First, as explained in *Burnett*, a state court in FELA litigation is a "court of competent jurisdiction." *Id.* at 432. Defendants there could have chosen to waive venue and the state court could have gone on to adjudicate Burnett's case. *Id.* at 429. Since Burnett's complaint could have proceeded to judgment, it satisfied the FELA's requirement that he "commence" the case within two years of the cause of action accruing. Similarly, in *Herb*, the plaintiff "commenced" his FELA case because it was possible to transfer that case to the proper venue—it could proceed in unbroken fashion from one state court to another. 325 U.S. at 79. The Supreme Court explicitly reserved judgment on whether such an action would be

"commenced" if "state law made new or supplemental process necessary," since reissuing process would "commence" a new case. *Id.*

Not so here.  Williams filed his original case in the local court.  But Congress has explicitly limited jurisdiction of Rehabilitation Act claims to "[e]ach United States district court."  42 U.S.C. § 2000e-5(f); *see* 29 U.S.C. § 794a(a)(1).  The D.C. Superior Court is not such a court.  As a result, unlike *Burnett*, the Superior Court was not a "court of competent jurisdiction" and would have had no authority to hear Williams's case.

Nor could this jurisdictional defect be remedied by transfer to the proper court, as it could in *Herb*.  After Williams first sued in Superior Court, the Secretary removed the case here.  *See* Compl. at 2 n.1.  Under 28 U.S.C. § 1442(a), federal defendants who are sued in "a State court" may remove the action to a federal district court. [10]  But when a federal defendant removes a case under § 1442, the federal court may only hear the plaintiff's claims if the state court had jurisdiction to hear the those claims.  *Day v. Azar*, 308 F. Supp. 3d 140, 142 (D.D.C. 2018) (citing *Lambert Run Coal Co. v. Baltimore*, 258 U.S. 377, 382 (1922)).  As this Court explained in Williams's first case, since the Superior Court lacked jurisdiction over his Rehabilitation Act claims, it could not exercise jurisdiction even after the Secretary removed the case to the proper court.  *See Williams*, 386 F. Supp. 3d at 53–54.

Second, unlike *Burnett*, Williams's case does not raise concerns about equal enforcement of the Rehabilitation Act's statute of limitations.  In *Burnett*, had Williams filed his FELA case in almost any other state or federal court, the statute of limitations would have been tolled.  380 U.S. at 433–34.  But Ohio law—which failed to provide either an opportunity to transfer venue or a "saving statute"—dictated that his case be dismissed.  Here, even if Williams's case were

---

[10]  For removal, the "term 'State court' includes the Superior Court of the District of Columbia."  28 U.S.C. § 1442(d)(6).

filed in any other state court, it could not have been remedied through removal to the federal court. *Id*. at 432–33. That is because *only* federal courts have jurisdiction over Rehabilitation Act cases, *see* 42 U.S.C. § 2000e-5(f); 29 U.S.C. § 794a(a)(1), and *no* federal court may entertain a suit removed from state court if that court lacked jurisdiction, *see Lambert Run Coal Co. v. Baltimore*, 258 U.S. 377, 382 (1922). So Williams's case received the same treatment that any other Rehabilitation Act case would have if filed in any state court.

The final case Williams cites also fails to save his Complaints. In *Harris v. Medical Transportation Management, Inc*., another judge in this District equitably tolled a statute of limitations because of "litigation delay." Pl.'s Opp'n at 3 (citing *Harris v. Med. Transp. Mgmt.*, 317 F. Supp. 3d 421 (D.D.C. 2018)). But there, the court tolled the statute of limitations for class certification because the court—not the plaintiffs—was at fault for the delay. *Id*. at 425–26. The court explained that the plaintiffs had "exhibited 'reasonable diligence' in pursuing their rights." *Id*. And "extraordinary circumstances" justified tolling the statute of limitations because the court "did not appreciate the limitations consequences of allowing the Motion to Dismiss to remain unresolved for months on end." *Id*.

Though Williams's memorandum cites *Harris*, he does not explain how this case supports his equitable tolling claim. Pl.'s Opp'n at 3. To be sure, litigation delays prolonged Williams's first case here—though not during the 90-day window in which Williams had to appeal. Some of those delays are attributable to Plaintiff—once the Secretary removed the case here, he needed to move for a more definite statement because Williams's original complaint was deficient. *See* Compl. at 2 n.1. Other delays—such as those caused by the prolonged federal government shutdown in January 2019—were outside his control. *Id*. But ultimately, these delays all occurred months after Williams needed to file his case in federal court. Williams

never explains how *any* of these delays could have prevented him from filing his case in the proper court within 90 days of receiving the Department's final decision.

In sum, Williams points to no "established law" that mandates equitable tolling if a *pro se* plaintiff timely files an action in the wrong court, especially when that original court lacked subject-matter jurisdiction. To the contrary, at least one judge in this District has concluded that a *pro se* plaintiff who appeals an agency's discrimination adjudication in the wrong court is *not* entitled to equitable tolling. *See Brookens v. Acosta*, 297 F. Supp. 3d 40, 50 (D.D.C. 2018), *aff'd*, No. 18-5129, 2018 WL 5118489 (D.C. Cir. Sept. 19, 2018). So now the Court turns to whether Williams independently meets the standard for equitable tolling. He does not.

**3.**

Williams suggests that the Court should equitably toll his action if there was "1) timely notice to the defendant in filing the first claim; 2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; [and] 3) reasonable and good faith conduct by the plaintiff in prosecuting the first action and diligence in filing the second action." Pl.'s Opp'n at 4 n.4 (quoting *Island Insteel Sys. v. Waters*, 296 F.3d 200, 217 (3d Cir. 2002)). And he proffers that he meets this standard. *Id.* But that is not the test for equitable tolling.

Instead, as the Supreme Court recently explained, "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe v. United States*, 136 S. Ct. 750, 755 (2016) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). The Court explained that the "extraordinary-circumstances prong . . . is meant to cover matters outside [the litigant's] control." *Id.* at 756. No extraordinary circumstances are present when the circumstance that

stood in a litigant's way was "a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation." *Head v. Wilson*, 792 F.3d 102, 107 (D.C. Cir. 2015) (internal quotations omitted).

Williams completely ignores this standard in his brief.  He makes no attempt to show that he pursued his rights diligently, nor does he cite any "extraordinary circumstances" that prevented him from filing his action in this Court within 90 days of the Department's final decision.  For the sake of this motion, the Court assumes that Williams was "pursuing his rights diligently" since he at least filed *a* complaint in *a* court.  But what "extraordinary circumstance" stood in his way preventing him from filing in the correct court?

Williams offers none.  The Court can imagine that his *pro se* status may have contributed to his mistake.  But, as other judges in this District have recognized, a plaintiff's "inability to retain an attorney is not an extraordinary circumstance."  *Miller v. Downtown Bid Servs. Corp.*, 281 F. Supp. 3d 15, 22 (D.D.C. 2017); *see also Martin v. Piedmont Airlines*, 916 F. Supp. 2d 11, 14 (D.D.C. 2013) (refusing to extend equitable tolling to a *pro se* litigant who "attribute[d] his delay to his inability to obtain legal advice or . . .  retain legal counsel"); *United States v. Lawson*, 608 F. Supp. 2d 58, 62 (D.D.C. 2009) ("[A] failure to meet the statutory deadline due to pro se representation is not a circumstance in which it is appropriate to toll the statute of limitations.").

In fact, in a comparable case, Judge Kelly rejected a *pro se* litigant's invitation to toll a statute of limitations when he mistakenly filed in the wrong court.  *Brookens*, 297 F. Supp. 3d at 50.  In *Brookens*, a former federal employee filed a complaint with the Merit Systems Protection Board ("MSPB") alleging race and age discrimination and retaliation for his union activity.  *Id*. at 43.  After the MSPB rejected his claims, he appealed the decision to the U.S. Court of Appeals

for the Federal Circuit, though the correct court was this one. *Id*. at 43–44. The Federal Circuit, doubting that it had jurisdiction, transferred the case here. *Id.* at 44. But by then, the time to appeal the MSPB's decision had lapsed. *Id.*

The plaintiff urged the court to equitably toll the filing deadline because "he erroneously believed that the Federal Circuit was the right forum for review of the MSPB's order and [he had] filed within the time limits prescribed for an appeal to that forum." *Id*. at 50. But Judge Kelly found that "[s]uch misapprehension of the law is facially insufficient to toll the statute of limitations." *Id*. (citing *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014)). MSPB proceedings could be "complex and at times confusing." *Id*. But the MSPB's order put the plaintiff on notice of his options to appeal. *Id*. "Any confusion about where to file this case was thus subjective and personal to [the plaintiff], whose only real excuse [was] that he was proceeding *pro se*." *Id*. at 51. Since filing *pro se* is not an extraordinary enough circumstance to justify equitable tolling, Judge Kelly dismissed the plaintiff's claims. *Id*.

So too here. The FAD informed Williams in bold, all-capitalized text that he had an opportunity to appeal the decision by "fil[ing] a civil action in the appropriate United States District Court." FAD at 18. He ignored these instructions, instead choosing to file his case in local court. *See* Compl. at 2 n.1. Even after Williams retained an attorney and the Secretary pointed out the jurisdictional defects in his original case, he did not try to fix his error by filing a new case in this Court. Instead, he went "all in" on a losing argument—that this Court could still hear his case even if the Superior Court lacked jurisdiction. *See Williams*, 386 F. Supp. 3d at 54.

Now Williams wants a mulligan. But he does not plead, much less prove, *any* circumstance that would explain his failure to file his appeal with the proper court within the proper timeframe. Given the FAD's clear instructions, the Court can only assume "confusion

about where to file this case was thus subjective and personal to [him]." *See Brookens*, 297 F. Supp. 3d at 45.  Though the Court is mindful that, at times, civil litigation can be complex and difficult to navigate, Williams's mistake was still "a product of [his] own misunderstanding of the law," not some "extraordinary circumstance" beyond his control.  *Menominee Indian*, 764 F.3d at 58.  His claims thus cannot be equitably tolled and must be dismissed as time-barred.

## IV.

For the reasons above, the Secretary's Motion to Dismiss will be granted.  Because Williams failed to exhaust his retaliation claim, the Court lacks jurisdiction over Count III of his Complaint and must dismiss it.  And since Williams waited too long to properly file his discrimination and failure to accommodate claims, Counts I and II will also be dismissed.  Since these claims would be dismissed under § 501 of the Rehabilitation Act, Williams's Motion to Amend will be denied.  A separate Order will issue.

Dated: April 16, 2020                                   TREVOR N. McFADDEN, U.S.D.J.